UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONNIE P. SANTILLO**,            Case No. 1:11 CV 468

    Plaintiff,                         Judge Christopher A. Boyko

    v.                             REPORT & RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                  Magistrate Judge James R. Knepp II

### INTRODUCTION

In this supplemental security income (SSI) case, Plaintiff Ronnie Santillo challenges the Commissioner's determination his benefits should be reduced because he (1) received in-kind support and maintenance from his parents and (2) had resources valued in excess of $2,000.

The district court has jurisdiction under 42 U.S.C. § 1383(c)(3). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed in part and reversed in part.

### BACKGROUND

**Procedural History**

In March 2005, an administrative law judge (ALJ) found Plaintiff disabled and awarded SSI benefits beginning July 24, 2000. (Tr. 237–46). Two months later, the Social Security Administration (SSA) determined, based on a pre-effectuation interview, Plaintiff's benefits should be reduced due to the receipt of in-kind payments from his parents and because Plaintiff possessed resources valued beyond the $2,000 regulatory limit. (Tr. 290–95). Plaintiff requested

reconsideration of that determination, which the SSA denied. (Tr. 322–331).

Thereafter, Plaintiff requested and received another administrative hearing before a different ALJ. After this hearing, the ALJ issued an opinion reducing Plaintiff's SSI benefits, making two findings Plaintiff now challenges: (1) Plaintiff received in-kind support and maintenance from his parents that he agreed to pay back only after obtaining an award of benefits; and (2) his resources exceeded the $2,000 regulatory limits. (Tr. 23–35). Plaintiff appealed the ALJ's decision to the Appeals Council, which denied review. (Tr. 7–10). Plaintiff then filed this action, seeking judicial review.

**The ALJ's Decision**

The ALJ first found Plaintiff received in-kind support from his parents, in the form of rent and household expenses, from July 2000 through the date of the decision. (Tr. 27). During that time, Plaintiff lived with his parents and his parents "paid all the expenses." (Tr. 28). Plaintiff argued he had always had an agreement with his parents to repay them for back rent and expenses, and because the in-kind support was actually a loan, it should not count against him. As proof, Plaintiff submitted signed statements from his mother to that effect (Tr. 286, 320), purportedly acknowledging she and her son had agreed he would pay her $200 per month for back rent and expenses once he received his SSI benefits. (Tr. 286).

The ALJ, however, found no such agreement ever existed (Tr. 29), because on multiple occasions prior to Plaintiff receiving SSI he and his parents had indicated to the Ashtabula County Department of Job and Family Services Plaintiff was not responsible for rent or expenses. (Tr. 28). Furthermore, the ALJ noted there was no other indication in the record Plaintiff ever intended to repay his parents for in-kind support. (Tr. 28). Without much explanation, the ALJ "accepted . . .

as accurate" and adopted the values the SSA placed on the in-kind support Plaintiff received from his parents. (Tr. 29).

The ALJ next found Plaintiff had resources worth more than $2,000 from July 2000 through March 2002 and again from January 2003 through May 2005. (Tr. 29). In coming to that conclusion, the ALJ noted Plaintiff owned the following vehicles: a 1985 Dodge Ram at the time Plaintiff filed his application through September 2002; a 1998 Harley-Davidson from June 1998 through July 2005; a 1994 Buick Century as of January 2006; a 1989 Buick Park Avenue as of December 2001; and a 2005 Harley-Davidson Plaintiff purchased in 2005. (Tr. 30).

The ALJ, clearly skeptical of Plaintiff's story, recounted several reasons why Plaintiff's story did not add up. First, the ALJ noted several inconsistencies in the dates of sale of several of the vehicles owned by Plaintiff. (Tr. 30). For instance, although Plaintiff stated in an affidavit he salvaged the Dodge Ram in 2000, he told the SSA in March 2001 he still owned the vehicle. (Tr. 30). The ALJ also found it dubious that Plaintiff's mother – whom the ALJ approximated was around 80 years old – made the payments on Plaintiff's 2005 Harley-Davidson, a claim both Plaintiff and his mother made. (Tr. 30).

And as to certain activity in Plaintiff's bank account, Plaintiff's girlfriend provided this explanation: she deposits money in Plaintiff's bank account from time to time so that she "may have money available when needed." (Tr. 30, 319). The ALJ found this practice "peculiar and confusing". (Tr. 30). Finally, the ALJ questioned how Plaintiff could ride a motorcycle when he had been previously adjudicated "disabled". (Tr. 31).

Based on this evidence, and his skepticism of Plaintiff's explanations, the ALJ found Plaintiff's resources were worth more than $2,000 from July 2000 through March 2002 and again

3

from January 2003 through at least May 2005. (Tr. 31).

## STANDARD OF REVIEW

The Social Security Act states that "the findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive…." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put differently, it is "more than a scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996). A court may not reverse, even if it would arrive at a different conclusion than the ALJ, if the decision is supported by substantial evidence. *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987). This Court may not review "the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Nevertheless, even where "substantial evidence otherwise supports the decision of the Commissioner, . . . reversal is required [if] the agency failed to follow its own procedural regulation, and the regulation was intended to protect applicants . . ." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

## DISCUSSION

### In-Kind Support and Maintenance

Plaintiff first contends the ALJ erred by finding Plaintiff did not have a bona fide loan agreement to repay the in-kind support he received from his parents. (Doc. 16, at 8). In support, Plaintiff contends he and his parents always had a verbal agreement he repay them for rent and expenses, and that agreement was memorialized later by a written agreement. (Tr. 286–89, 320, 327,

4

330). Plaintiff asserts the ALJ failed to recognize the validity of the oral agreement, which, he says, was properly formed under Ohio law. (Doc. 16, at 9).

A person is eligible for SSI benefits if he is "aged, blind, or disabled" and also has limited income and resources. 20 C.F.R. § 416.1100. Generally speaking, as a person's income increases, his benefits are reduced until his income reaches a threshold point, making him ineligible for SSI benefits. *Id.* When a claimant lives in the household of another and receives free food and shelter from the person in whose house the claimant is living, the claimant's income is increased by one-third of the federal benefit rate. 20 C.F.R. § 416.1131. Here, it is undisputed Plaintiff lived with his parents from 2000 through at least the date of the ALJ's decision. (Tr. 287–289).

On the other hand, "[s]ince inception of the SSI program, proceeds of a loan have not been considered income to the borrower because of the obligation to repay." Social Security Ruling (SSR) 92-8p, 1992 WL 466905, at *1. "A loan can be cash or an in-kind advance in lieu of cash", and "an advance of food or shelter can represent a loan of the pro rata share of household operating expenses." *Id.* at *2. In other words, if a claimant is required to repay his supporter for his generosity, the in-kind support is not considered income. *Id.*

That is exactly what Plaintiff claims happened here. Plaintiff views the ALJ's decision as a failure to recognize a valid oral agreement under Ohio law, against which this Court would judge the ALJ's decision if this were a case about whether Plaintiff had met all the requirements of forming an oral agreement. *See id.* (noting a "loan agreement may be oral or written, as long as it is enforceable under State law."). But this is not that case. Here, the ALJ simply did not believe Plaintiff and his parents ever had an oral agreement for repayment of in-kind support; rather, in the ALJ's view, Plaintiff and his mother reached this agreement only after he received SSI benefits

5

(Tr. 29), which, per the SSA's Program Operation Manual System (POMS), could not be applied retroactively. *See* POMS SI 00835.482 (stating in-kind support "given to an individual by friends or relatives with no obligation for repayment cannot be considered retroactively a loan at a later date"). In other words, the issue is not about legal sufficiency, it is about credibility.

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citation omitted). Still, an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, *2. In reviewing an ALJ's credibility determination, the Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case *de novo*, nor resolve conflicts in evidence . . . ." *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

Here, the ALJ's credibility determination is supported by substantial evidence. The ALJ noted Plaintiff repeatedly indicated his parents paid all the expenses and provided all necessities for Plaintiff and Plaintiff's son. (Tr. 28, 61, 247, 253, 254, 256, 257, 280). Plaintiff and his parents also repeatedly submitted "landlord statements" to the Ashtabula County Department of Job and Family Services indicating Plaintiff's share of the household expenses was zero. (Tr. 248, 250, 252, 255, 258, 263, 269, 274, 275, 278, 279). It was not until 2005 that there was any indication from Plaintiff

6

or his parents he was obligated to repay his parents for their support at a rate of $200 per month. (Tr. 28, 286, 287–88). Plaintiff and his parents submitted hand-written statements further explaining Plaintiff's parents pay for all of his and his son's expenses, aside from food (Tr. 256, 257, 280); as the ALJ saw it, if there truly was an oral repayment agreement in place, Plaintiff had the opportunity to mention it. (Tr. 29). As the ALJ noted, Plaintiff's more recent statement that he and his parent's always had a repayment agreement is at odds with his numerous previous statements to Ashtabula County officials. (Tr. 28).

Although Plaintiff argues the ALJ should have found it was in fact consistent for him to report he was not responsible for any rent or expenses with an oral repayment agreement, the ALJ's decision to find otherwise is supported by substantial evidence and this Court cannot reverse on this basis. *See Cornette v. Sec'y of Health & Human Servs.*, 869 F.2d 260, 263 (6th Cir. 1988) (stating that if supported by substantial evidence, the Commissioner's decision must stand "regardless of whether the reviewing court would resolve the issues of fact in dispute differently"). Here, the ALJ cited to specific record facts that cast doubt on the existence of an oral agreement between Plaintiff and his parents. This was a proper basis upon which to base a credibility finding. *See Norris v. Comm'r of Soc. Sec.*, 2012 U.S. App. LEXIS 2420 (6th Cir. 2012) (finding ALJ's adverse credibility determination was supported by substantial evidence where it was based on inconsistencies in claimant's testimony).

Accordingly, the undersigned recommends affirming the ALJ's determination that Plaintiff received in-kind support from his parents from July 2000 through the date of the ALJ's decision.

**Excess Resources**

Plaintiff also argues the ALJ erred when he determined Plaintiff had resources in excess of

the regulatory amount, which, Plaintiff points out, contains no mathematical support whatsoever. (Doc. 16, at 12–18).

If an individual has more than $2,000 worth of resources, he is ineligible for SSI benefits. 20 C.F.R. § 416.1205. The Social Security regulations define "resources" as "cash or other liquid assets or any real or personal property that an individual (or spouse, if any) owns or could convert to cash to be used for his or her support and maintenance." 20 C.F.R. § 416.1201(a). "If the individual has the right, authority or power to liquidate the property or his or her share of the property, it is considered a resource." § 416.1201(a)(1). Under the regulations, "automobiles" are deemed non-liquid resources whose equity value is "the price that item can reasonably be expected to sell for on the open market in the particular geographic area involved minus any encumbrances." § 416.1201(c)(2)(i)–(ii).

Certain items are also excluded from resources determinations. Important here is the automobile exclusion, which excludes one automobile from the analysis, regardless of value, "if it is used for transportation for the individual or a member of the individual's household." 20 C.F.R. § 416.1218(b). For purposes of this exclusion, "automobile" includes "in addition to passenger cars, other vehicles used to provide necessary transportation." *Id.*

On this point, the ALJ's determination is far from supported by substantial evidence. To begin, there is no indication here of the value the ALJ attributed to any individual vehicle, if he did so at all. (Tr. 30–31). The ALJ simply never mentioned it in his decision. While there is some evidence in the record as to the value of some of the vehicles, those values varied widely. For instance, there is a National Automobile Dealers Association (NADA) appraisal for a 1998 Harley in the record that ranges from $3,840 to $5,310 (Tr. 331), but Plaintiff stated he purchased that

particular Harley for $800 and sold it for only $300 (Tr.335). Also, Plaintiff stated he salvaged his Dodge Ram for $100 (Tr. 335), but suggests in his brief it could be worth, at most, $325 (Doc. 16, at 15). As for the values of the other vehicles in Plaintiff's stable, it is not clear from the record their value and so it is impossible to determine if the ALJ's assessment of their value is supported by substantial evidence.

Respondent argues the ALJ could properly take into consideration the many inconsistencies in Plaintiff's testimony and supporting evidence to determine the vehicles' values. (Doc. 19, at 16–17). While the ALJ is by no means obligated to just take Plaintiff's word for it when it comes to the value of these vehicles, an adverse credibility finding is no replacement for number-crunching. Under the regulations, the ALJ must determine "the price that item can reasonably be expected to sell for on the open market in the particular geographic area involved minus any encumbrances." § 416.1201(c)(2)(i)–(ii). This he failed to do.

But that's not all. The ALJ also failed to determine (1) if Plaintiff indeed held an interest in each of these vehicles (something he disputes) and (2) whether any were subject to the automobile exclusion pursuant to § 416.1218(b)(1). Under the regulations, a person's "equity" in automobiles is counted as a resource. § 416.1218(b)(2). Plaintiff claims he never owned the 1989 Buick Park Avenue at any time (Doc. 16, at 15) and therefore it should not count toward the value of his resources. *See* § 416.1218(b)(2) ("Your equity in the other automobiles is counted as a resource."). The record seems to support that assertion (Tr. 268, 335, 376), but the ALJ must make that ultimate finding.

The ALJ should have investigated whether any of Plaintiff's "automobiles" – which could also include motorcycles, § 416.1218(b) – fell into the automobile exclusion. § 416.1218(b)(1)

9

("One automobile is totally excluded regardless of value if it is used for transportation for the individual or a member of the individual's household."). On remand, the ALJ should determine how the automobile exclusion affects the aggregate value of Plaintiff's resources, if at all.

Finally, a few words about Plaintiff's other resources are in order. Plaintiff suggests the ALJ may have improperly counted Plaintiff's life insurance policy as a resource. (Doc. 16, at 14). Under 20 C.F.R. § 416.1230, the surrender value of a life insurance policy factors into an individual's resources valuation only if that value exceeds $1,500. The ALJ appears to have acknowledged this exclusion because he never mentioned the policy's inclusion in his opinion (Tr. 29–31) and even acknowledged its exclusion during the administrative hearing. (Tr. 387). So that appears to be a non-issue.

However, the value of Plaintiff's bank account, into which his girlfriend occasionally deposited money, remains an issue. The value of the bank account would count toward Plaintiff's resource limit, *see* § 416.1201(a), but the record is devoid of any information as to its value, and should be determined on remand.

The undersigned notes the ALJ could be entirely correct in his assumption that Plaintiff's resources exceed $2,000, and so offers no opinion on their actual value. But on this record, all anyone can do is speculate about their worth, and that is not good enough. The regulations call for more than conjecture; they require, at the very least, some basic arithmetic.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned recommends affirming in part and reversing in part. The ALJ's determination that Plaintiff received in-kind support and maintenance from his parents without an agreement to repay them was simply a credibility determination as to whether an oral

repayment agreement ever existed. That adverse credibility determination is supported by substantial evidence. However, in determining that Plaintiff's resources exceeded the $2,000 limit, the ALJ failed to follow the applicable regulations and his decision is not supported by substantial evidence. Therefore, that determination should be reversed and the case remanded for further proceedings.

                                                s/James R. Knepp II
                                              United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).